**UNITED STATES of America**

v.

**Louis C. OSTRER et al., Defendants.**

**78 Cr. 0535 (KTD).**

United States District Court,
S. D. New York.

Oct. 21, 1980.

Richard H. Wynn, New York City, for Louis C. Ostrer.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Louis Cuple Ostrer was convicted by a jury of conspiracy to evade taxes, income tax evasion, conspiracy to embezzle, embezzlement, interstate transportation of stolen property and running a corrupt organization influenced by racketeers.

The conviction is supported by overwhelming evidence, the most damaging of which came from the mouth of the defendant who admitted practically every element of each and every count of the indictment. Apparently his defense was based on an alleged lack of intent; as to this, the jury did not believe him. Indeed, if the jury had believed him, I would have been amazed. Ostrer's defense included a braggadocious explanation of how he cheated not only the government out of $6.8 million in taxes but various insurance companies, banks and pension and welfare funds out of enormous amounts of money.

Ostrer, however, contends that his conviction must fall since it was tainted by illegal electronic surveillance, an illegal search and seizure and by use of immunized grand jury testimony. The testimony and other proof received at the post-trial hearing held with respect to these matters demonstrate that neither the direction of the investigation nor the evidence offered by the government were developed from the illegal wiretap, the subsequent search or the immunized grand jury testimony. I hold that the government has sustained its burden of showing that its knowledge of the facts on which the defendant was convicted was gained from legitimate, independent sources.

A.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for United States; Richard F. Ziegler, Asst. U. S. Atty., New York City, of counsel.

Defendant Louis Ostrer's business at 377 Fifth Avenue was subjected to electronic surveillance by the New York County District Attorney's office from October 25,

1972 until February 21, 1973. Following this surveillance, a search of these premises was conducted pursuant to a state search warrant and numerous documents were seized. Shortly thereafter, the antecedent wiretap which allegedly led to the electronic surveillance of Ostrer's business was declared to be in violation of the Fourth Amendment by a New York State court. *People v. Brown*, No. 1392–1973 (N.Y. Sup.Ct. Feb. 1973).

Defendant alleges that since the information leading to the February 21, 1973 search was obtained through an illegal wiretap, any documents seized therein are tainted. Defendant Ostrer further alleges that the seized documents were passed from one government agency to another until they ultimately catalysed the current prosecution of the defendant for violations of certain I.R.S. and other criminal statutes. There is no claim that any evidence obtained by the eavesdropping was itself introduced. Defendant Ostrer's sole contention is that the impetus and direction of the federal investigation of Louis Ostrer resulted from its review of the records seized by New York state officials from Ostrer's office.

The government contends that its investigation of Mr. Ostrer and the evidence leading to his conviction were not tainted by the illegal wiretap for purposes of this case because no federal agent ever listened to the wiretap and because the government had an independent right to inspect the allegedly tainted documents.

█ In order to make effective the fundamental Constitutional guarantees of privacy under the Fourth Amendment the Supreme Court has closed the doors of the federal courts to any use of evidence unconstitutionally obtained. *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The exclusionary rule has traditionally barred the use of evidence obtained either during or as a direct result of an unlawful invasion. *Silverthorne Lumber Co. v. U. S.*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The essence of the rule is not merely that evidence illegally acquired shall not be used at trial but that

it shall not be used at all, even for investigative purposes. *Id.* at 392, 40 S.Ct. at 182. The exclusionary rule, however, does not render the facts thus obtained "sacred and inaccessible." *Id.* Evidence disclosed solely from independent legal sources is admissable even though leads from illegal sources, if pursued, would have uncovered the same evidence. *Id.*

The question that must be answered is whether the investigation by the IRS of Mr. Ostrer and the evidence thereby obtained were fruits of the illegal wiretap or instead were obtained from independent legal sources.

█ The legal standard applicable here requires the defendant Ostrer to go forward with specific evidence demonstrating taint. "The trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939). Once defendants meet their initial burden, the United States must convince the trial court by a preponderance of the evidence that its case had an origin independent of the illegal surveillance. *Id.*

Mr. Ostrer has not proven that the government's investigation or trial evidence was tainted by the illegal wiretap. Mere allegations "on information and belief" by defendant's attorney that the IRS agents investigating Mr. Ostrer saw the seized materials and that other investigators who had seen the materials passed information onto the IRS Strike Force do not satisfy defendant's burden of proving that a substantial portion of the government's case was tainted. *United States v. Nardone*, 127 F.2d 521, 523 (2d Cir.), *cert. denied*, 316 U.S. 698, 62 S.Ct. 1296, 86 L.Ed. 1767 (1942).

█ In addition, I cannot accept defendant's contention that the IRS was barred from examining his records, regardless of their discovery by legal means. Defendant claims that the records were tainted because they had been earlier seized in connection with an illegal wiretap by another

governmental agency. In essence, defendant is asking the court to find that he is entitled to a lifetime exoneration from prosecution for future tax evasion in any general category of deductions or income touched upon in the records seized in connection with the illegal surveillance. Reason and common sense preclude such a far-fetched finding. Any such rule would "increase to an intolerable degree interference with the public interest in having the guilty brought to book." *United States v. Blue,* 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966).

 Evidence developed through the examination of defendant's business records by federal agents is not tainted merely because those documents, at the time they were examined, were in the unlawful custody of the New York District Attorney. *In Re Grand Jury Subpoena of William Kilroy,* M11–188 (WCC), (S.D.N.Y. Aug. 17, 1976). It is only when "the evidence to which the instant objection is made has been come at by exploitation of the illegality . . ." that it must be excluded from the government's case. Maguire, *Evidence of Guilt,* 221 (1959). The exclusionary rule has no application where the government learned of the evidence "from an independent source." *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Mr. Ostrer has not offered any proof that the investigative agents took an illicit look at the records seized in connection with the wiretap.

Even assuming that the defendant had demonstrated the requisite possibility of taint, the government has satisfactorily shown through credible witnesses, internal IRS memoranda and other documents that its case was not dependent on evidence obtained through the illegal wiretap.

 There is no indication that any of the investigative agents ever listened to illegal wiretap recordings. Moreover, the government's investigation was not tainted by an illicit look at documents in the possession of state authorities. There is no question that government agents examined the records seized from the defendant's office while they were in the custody of the New York authorities. I am satisfied, however, that the government had a right to do so. The government has carefully enumerated the independent legitimate sources that led to the discovery of the records. As previously stated, the fact that those records happened to be in the unlawful custody of the state at the time they were examined by the federal agents is immaterial so long as the government learned of the evidence from independent sources. Since the government has shown that its examination of the seized records was not tainted by the illegal actions of the state, it follows *a fortiorari* that any subsequent direction or impetus of the ongoing investigation that may have been catalysed by the contents of the documents was also legal.

 Finally, even if the government had taken an illicit look at the records in the state's custody, which I find it did not, any connection between an examination of Mr. Ostrer's records in 1973 and the subsequent investigation and indictment of Louis Ostrer for failure to pay taxes would have been "so attenuated as to dissipate the taint." *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939). Given Mr. Ostrer's notoriety, the irrelevance of the seized records to the crime charged in the indictment and the fact that Mr. Ostrer had not yet committed the crime with which he was charged in 1977, I must conclude that any illicit look at the seized records in 1973 would have provided the government with little, if any, impetus or direction in its investigation of Mr. Ostrer for tax evasion in later years. Suppression of evidence is not warranted where the link between the allegedly illicit act and the government's case against the defendant is so tenuous. *Id.* at 342, 60 S.Ct. at 268.

**B.**

I turn now to the immunity issue. In 1974, defendant Louis Ostrer was required to testify before a New York State grand jury about his financial affairs and other matters relating to the federal prosecution

involved in this case. Under New York law, C.P.L. § 190.40, a witness called before a grand jury is required to give the evidence requested of him regardless of the risk of self-incrimination. In return for his testimony and with only three qualifications,[1] the witness automatically receives immunity from (i) *prosecution* by the State of New York on any charges related to his testimony, and from (ii) *use* against him of his testimony and any evidence derived from his testimony in any federal prosecution. *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *United States v. Nemes,* 555 F.2d 51 (2d Cir. 1977).

The defendant Ostrer alleges (i) that he is entitled to immunity from federal, as well as state, prosecution and (ii) that the government used Ostrer's testimony as the basis for the present federal indictment and prosecution.

 Defendant's first argument fails because the grant of state immunity and the fifth amendment provide a state grand jury witness only with *use* immunity in related federal prosecutions. *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972); *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). This total prohibition on use assures that the witness is not compelled to incriminate himself by his own testimony. The protection provided is substantial: the government may not use compelled testimony as an investigative lead nor submit evidence obtained by focusing investigation on a witness as a result of his compelled disclosures. *Kastigar v. United States,* 406 U.S. at 460, 92

S.Ct. at 1664. Neither the New York statute nor the fifth amendment, however, grants the witness pardon or amnesty. *Id.* at 461, 92 S.Ct. 1665. Both the statute and the Fifth Amendment allow the government to prosecute using evidence from legitimate, independent sources. *Id.*

The defendant's second argument alleging that the government's case is tainted because it was derived largely from his immunized grand jury testimony also fails.

The Supreme Court has made clear the government's burden when it prosecutes a witness who has testified under a state grant of immunity to matters related to the federal prosecution. As stated in *Murphy*: "The government has the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence."

 I am satisfied that the government has established by a preponderance of the evidence that the proof presented to the federal grand jury and to the trial jury was derived from sources wholly independent of defendant Ostrer's testimony before the New York State grand jury. Credible witnesses testified that none of the I.R.S. investigative agents or attorneys involved in the investigations of Mr. Ostrer had access to the grand jury transcript or its contents. In fact, the state grand jury testimony was not even transcribed until I ordered it done. After it was transcribed, it was delivered to me and has remained in my possession throughout the trial. The government's proof also established independent sources

1. C.P.L. § 190.40 provides that
 1. Every witness in a grand jury proceeding must give any evidence legally requested of him regardless of any protest or belief on his part that it may tend to incriminate him.
 2. A witness who gives evidence in a grand jury proceeding receives immunity unless:
 (a) He has effectively waived such immunity pursuant to section 190.45; or
 (b) Such evidence is not responsive to any inquiry and is gratuitously given or volunteered by the witness with knowledge that it is not responsive.

 (c) The evidence given by the witness consists only of books, papers, records or other physical evidence of an enterprise, as defined in subdivision one of section 175.00 of the penal law, the production of which is required by a subpoena duces tecum, and the witness does not possess a privilege against self-incrimination with respect to the production of such evidence. Any further evidence given by the witness entitles the witness to immunity except as provided in subpara-

graphs (a) and (b) of this subdivision.

for each one of the eight items of evidence referred to by the defendant in his state grand jury testimony and used in the government's case.

One last item needs to be addressed. Ostrer contends that he should be permitted to further inspect the files of the prosecution to obtain evidence to support his theories of taint. In a case such as this, where there are merely vague assertions of taint by defense counsel, there clearly is no legal requirement for the government to turn over all its files to the defendant so that he can conduct a fishing expedition for evidence he hopes to find there. *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974).

Defendant's motion, in all respects, is denied. A pre-sentence report is ordered. The date of sentence is December 15, 1980.